[Civ. No. 1774.    Third Appellate District.—February 4, 1918.]

EDWIN H. WILLIAMS, Appellant, v. CITY OF VALLEJO (a Municipal Corporation), et al., Respondents.

MUNICIPAL CORPORATIONS—CHARTER—POWER OF LEGISLATURE.—Under the constitution, the legislature has no authority to make any alteration or amendment to a city charter, but its sole power is to ratify or reject it.

ID.—DATE OF TAKING EFFECT OF CHARTER—RIGHT TO PROVIDE IN CHARTER.—A city charter may provide that some of its provisions shall

take effect on a date other than the date of its approval by the legislature.

ID.—CONSTRUCTION OF RESERVOIR—PART OF WATER SYSTEM—MUNICIPAL AFFAIR.—The construction of a reservoir by a city upon its own land and to be used for the benefit of the inhabitants thereof as a part of its water system is a municipal affair, within the provision of section 8 of article XI of the constitution.

ID.—CONSTRUCTION OF RESERVOIR IN CITY OF VALLEJO—CHARTER GOVERNING WORK.—A contract for the construction of a reservoir in the city of Vallejo upon its own land for the benefit of the city as a part of its water system, which was entered into on the nineteenth day of June, 1911, is governed by the charter of 1899 (Stats. 1899, p. 370), and not by the charter of 1911 (Stats. 1911, p. 1422), since by the express provision of section 128 of the latter instrument, it did not become effective for purposes other than the election of officers until July 1, 1911, notwithstanding it was approved by the legislature on March 11, 1911.

ID.—CITY CONTRACTS UNDER VALLEJO CHARTER OF 1899—PUBLIC WORK ACT OF 1897 INAPPLICABLE.—In view of the fact that the charter of 1899 of the city of Vallejo (Stats. 1899, p. 370), provides a complete scheme for the letting of contracts, including the terms and conditions under which such contracts are to be let, including also the giving of a bond by the contractor for the faithful performance of the contract, it follows that the act of March 27, 1897, or the amendatory act of May 1, 1911, relating to the giving of a bond to protect materialmen and laborers employed by the contractor on public work, has no application to contracts let under such charter.

APPEAL from a judgment of the Superior Court of Solano County. W. T. O'Donnell, Judge.

The facts are stated in the opinion of the court.

Karl F. Kennedy, and Edwin H. Williams, for Appellant.

James H. O'Leary, and L. G. Harrier, for Respondents.

CHIPMAN, P. J.—This action was brought by plaintiff to recover judgment for the sum of $3,496.44, with interest at seven per cent from February 29, 1912, and for costs of action against the defendant city of Vallejo, and the defendants Pryor, Blake and Chappelle, as individuals, by reason of their having been at the time the alleged indebtedness occurred, members of the board of public works of the city of Vallejo. It is alleged in the complaint that on the nineteenth day of

June, 1911, the city of Vallejo "duly and regularly author-
ized the board of public works of the city of Vallejo to accept
the bid of the American Construction Company, a corpora-
tion, for the construction of a reservoir for the said city of
Vallejo and to award a contract for the performance of said
work to said American Construction Company. That there-
upon and in pursuance of said authorization said board of
public works of the city of Vallejo, and G. Pryor, W. P. Blake
and J. F. Chappelle, commissioners thereof, did accept said
bid of said American Construction Company for the perform-
ance of said works, and did enter into a contract with said
American Construction Company for the performance of said
work, for the amount of its bid, to wit, the sum of $35,925.
That under and by the terms of said contract said reservoir
was to be and actually was constructed upon land within the
limits of said county of Solano, state of California, belong-
ing to said city of Vallejo and owned by it, and that all of
said property is, and was at all the time herein mentioned,
public property owned in fee simple absolute by said city
of Vallejo." That at the time said contract was entered into
said board of public works "and the defendants herein, and
each of them, wholly failed and neglected to furnish or file
with said board of public works or otherwise, or require said
American Construction Company to furnish or file with said
board of public works or otherwise any bond in favor of sub-
contractors, laborers, and materialmen . . . as required by
that certain act of legislature entitled: 'An act to secure the
payment of the claims of materialmen, mechanics, or laborers,
employed by contractors upon state, municipal, or other pub-
lic work,' approved March 27, 1897, and that no bond of any
kind or character was filed by any person whomsoever at any
time in compliance with the terms of the statute above men-
tioned or otherwise." It is then alleged that the said Ameri-
can Construction Company entered upon the performance of
the work and completed the same on or about February 29,
1912, "and thereupon said city of Vallejo and said defend-
ants herein duly and regularly accepted said work from said
American Construction Company and paid for the same in
full. That the contract hereinabove mentioned was reduced
to writing and entered into as a written contract." That
during the performance of the work under said contract the
said American Construction Company employed certain five

different persons, corporations, or companies to furnish certain work and labor and certain materials to be used in the construction of said reservoir, and in separate counts the complaint sets forth the fact showing that each of said persons did perform the work and furnish the materials as alleged, also setting forth the reasonable value of said work and that the said American Construction Company promised to pay in each instance the amount claimed therefor "immediately upon the completion of said work, but that although often demanded it has refused to pay" the amounts severally claimed by said claimants, and that the amount claimed in each instance is now "owing and unpaid on said account after deducting all just credits and offsets." That said claimants, and each of them, prior to the commencement of this action assigned their several claims to plaintiff, and he is now the owner and holder thereof. That plaintiff has demanded settlement from defendants herein, and each of them, of the several amounts shown by the complaint to be still due on said claims, "but that said defendants, and each of them, have wholly neglected and refused to pay the same or any part thereof." The aggregate of these said several claims amounts to the sum above stated for which judgment is asked.

The contract referred to in the complaint is not set out in full nor is there any exhibit showing a copy thereof.

A general and special demurrer was filed and the court ordered that it be sustained. Whereupon judgment was entered for defendants and that plaintiff take nothing by this action. Plaintiff appeals from the judgment.

The point chiefly relied upon by appellant is as follows: "The city and its responsible officials are liable to the plaintiff for their failure to file a bond to secure the payments of the claims of laborers and materialmen in accordance with public works act." The statute referred to is the act approved May 1, 1911 (Stats. 1911, p. 1422), amending the act approved March 27, 1897 (Stats. 1897, p. 201). Section 1 of the act of 1911 provides as follows: "Every contractor . . . to whom is awarded a contract for the execution or performance of any building, excavating, or other mechanical work for this state, or by any county, city and county, city, town or district therein, shall, before entering upon the performance of such work, file with the commissioners, . . . common council or other body by whom such contract was awarded,

a good and sufficient bond . . . and must provide that if the
contractor, person, company . . . fails to pay for any mate-
rials or supplies furnished for the performance of the work
contracted to be done, or for any work or labor done thereon
of any kind, that the sureties will pay the same, in an amount
not exceeding the sum specified in the bond; provided, that
such claim shall be filed as hereafter required.''

Section 2 of the act provides that any person furnishing
materials or supplies used in the performance of the work
contracted to be executed or performed, or any person who
performed work or labor upon the same, or any person who
supplies both work and materials, and whose claim has not
been paid by the contractor, company, or corporation, to
whom the contract has been awarded, shall within ninety
days from the time such contract is completed, file with the
body of officers by whom said contract was awarded a veri-
fied statement of such claim together with a statement that
the same has not been paid.

Appellant also calls attention to section 66, article XI, of
the 1911 charter (Stats. 1911, p. 2004), which provides that
progressive payments may be made for work done under con-
tracts, but ''no contract shall provide for or authorize or
permit the payment of more than seventy-five per cent of the
contract price before the completion of the work done under
said contract and the acceptance thereof by the proper offi-
cer, department or board.''

Respondents contend that at the time the alleged contract
was entered into, the city of Vallejo had a freeholders' char-
ter which controlled absolutely and was free from impair-
ment by general laws as to all municipal affairs, and that
this was the charter of 1899. (Stats. 1899, p. 370.)   That
the contract under consideration was made June 19, 1911,
whereas the charter of the city of Vallejo of 1911 went into
effect July 1, 1911, by its own provisions, section 128 thereof
being as follows: ''For the purpose of nominating candidates
and electing the mayor, auditor, commissioners and school
directors in accordance with this charter, this charter shall
take effect from the time of the approval of the same by the
legislature; for all other purposes it shall take effect on the
first day of July, 1911.'' (Stats. 1911, p. 2027.)   Appel-
lant's reply to this contention is that under the provisions of
article XI, section 8, of the constitution, the charter went

into effect March 11, 1911, the date at which the joint resolution approving and ratifying the charter was filed in the office of the Secretary of State, "notwithstanding the provision in the charter itself to the contrary." The provision found in the constitution reads as follows: "The legislature shall by concurrent resolution approve or reject such charter as a whole, without power of alteration or amendment; and if approved by a majority of the members elected to each house it shall become the organic law of such city or city and county, and supersede any existing charter and all laws inconsistent therewith." In other words, the appellant contends that the taking effect of the charter is governed by the constitutional provision and not by the terms of the charter itself, and in support of this contention cites the case of *Burke* v. *Board of Trustees of San Francisco,* 4 Cal. App. 235, [87 Pac. 421]. The quotation cited by appellant reads as follows: "The act of March 3, 1899 (Stats. 1899, p. 57), is not available to the appellant. That act was a general law applicable to all counties, cities and counties, and towns in the state, whereas the charter of San Francisco is a freeholders' charter, and, when approved by the legislature in 1899, became by the express terms of the constitution (art. XI, secs. 6, 8) the organic law of the city and county, and superseded the existing charter and all laws inconsistent therewith, and thereafter the city and county was no longer subject to or controlled by general laws." It is stated in the opinion that the charter of San Francisco went into effect January 1, 1900, and as it further appears that the resolution of approval was passed in 1899, the charter itself must have declared when it was to take effect, and this would seem to show that the case does not support appellant's contention. However, we entertain no doubt of the power of the people in adopting a freeholders' charter to provide when certain of its provisions shall take effect. The legislature has no authority under the constitution to make any alteration or amendment of the charter. Its sole power is to ratify or reject. It is true that the charter takes effect, as declared by the court in the case cited, when approved by the legislature, but that case does not hold that the charter in all its provisions takes operative effect on the date of its approval by the legislature. What the court said is entirely consistent with the view that the charter takes effect according to its provisions. We do not think the stat-

ute of 1911, or the charter adopted in that year, upon which appellant relies, is applicable here, but the right of recovery on the part of plaintiff must be determined by the provision of the charter of 1899 and the condition of the law prior to the adoption of the charter of 1911.

Appellant's argument is based exclusively upon rights alleged to arise out of the provisions of the charter of 1911, and unless that charter was in force when the contract was entered into, the complaint fails to state a cause of action, since no similar provisions are found in the charter as it stood prior to the execution of the contract.

That the construction of a reservoir by a city upon its own land and to be used for the benefit of the inhabitants of the city as a part of its water system constituted a "municipal affair" cannot admit of doubt. The constitution expressly provides that "it shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." (Sec. 8, art. XI; *Burke* v. *Board of Trustees, supra; Dinan* v. *Superior Court,* 6 Cal. App. 217, [91 Pac. 806].)

The charter of 1899 provides a complete scheme for the letting of contracts, including the terms and conditions under which such contracts are to be let (Stats. 1899, p. 399), including also the giving of a bond by the contractor for the faithful performance of the contract. (Stats. 1899, sec. 85, p. 402.) It follows that the act of March 27, 1897, or the act of May 1, 1911, referred to by appellant, relating to the giving of a bond to protect materialmen and laborers employed by the contractor on public work, has no application to the present case. This seems to have been definitely settled as the law in the case of *Loop Lumber Co.* v. *Van Loben Sels,* 173 Cal. 228, [159 Pac. 600]. Defendant entered into a contract with the city and county of San Francisco to do certain sewer work. He gave bond as required by the act of March 27, 1897, for the protection of materialmen, mechanics, and laborers employed on the work. Defendant defaulted and the action was brought against him and his sureties. Plaintiff had judgment and on appeal the judgment was reversed.

We quote from the opinion, written by Chief Justice Angellotti, 173 Cal., at page 232, [159 Pac. 602]: "We do not think it can be seriously questioned that a municipality may provide in its freeholders' charter for a complete scheme for the doing of such work that will be paramount to anything contained in any act of the state legislature, and that in regard to such municipality, anything contained in any general law of the state that is inconsistent with the charter provisions must be inoperative." We quote further, 173 Cal., at page 233, [159 Pac. 602]: "Section 21 [referring to the charter of the city and county of San Francisco] provides for the contract and its execution. It requires, among other things, that, at the same time with the execution of the contract, the contractor shall execute to the city and county a bond conditioned 'for the faithful performance of the contract.' No other bond is required by the charter. . . . It is apparent that a complete scheme is thus provided by the charter for the doing of such work as is here involved, and that it was intended to specify all the terms and conditions upon which a contract was to be awarded and the work contracted for performed. . . . It seems to us to be perfectly clear that a state statute imposing other conditions on the contractor . . . is inconsistent with the charter provisions on the subject and consequently ineffectual for any purpose.

"It is urged that the act is not in conflict with the charter, for the reason that the latter contains no provision at all in regard to such a bond as is required by the act—neither requires such a bond nor in terms declares that no such bond is essential; but this in no degree affects the question. The charter does purport to provide all the conditions imposed on the contractor as a prerequisite to doing the work, including the giving of a bond for the faithful performance of the contract, and contemplates that upon compliance with those conditions he shall proceed with such work. Any law purporting to impose other conditions as a prerequisite to doing the work is necessarily inconsistent with the charter. It is not a case where the charter is silent upon the matter, and the authorities recited by respondent in this connection are therefore not in point. . . . "

The Vallejo charter is quite similar to the charter of the city of San Francisco in its provisions relating to contracts respecting the letting of contracts, and as to contracts em-

bracing a "municipal affair," its provisions are controlling. Respondents advance some other reasons in support of the judgment, but as we deem the foregoing as conclusive of the question presented by appellant, we need not consider them.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.